And will you please call the next case, please? Mr. Fisher. Good afternoon, Your Honors. May it please the Court, Counsel, I'm representing the defendant in this case, Trevor Zirkin. Mr. Zirkin was convicted in a bench trial of two counts of criminal sexual abuse. Specifically, the judge found that in August of 2009, Trevor had vaginal and oral sex with M.M. at a time when she was between the ages of 13 and 17. She testified at trial, she was 15 years old in August of 2009, and Trevor was less than five years older. Evidence at trial showed that he was 19 years old at that time. The defendant was sentenced to a term of two-year sex offender probation and 45 days in the county jail. A single issue is raised on appeal in which the defendant argues that the trial judge abused his discretion in denying the defendant's motion for a new trial based on newly available evidence of actual innocence. The defendant on appeal therefore asked this Court to reverse that order, denying the post-trial motion, to vacate his convictions, and to remand this cause for a new trial. The evidence at trial showed that in August 2009, Trevor Zirkin and David Russo shared a townhouse. One evening that month, Mr. Russo wanted to get together with Nikki Starkey, a young woman he had begun dating. So Trevor and David drove to Starkey's residence, picked her up, she then asked them to pick up her friend M.M. They did so, they returned to the townhouse. Now of these four individuals, only two of them testified at trial, M.M. and Trevor Zirkin. And at this point, their testimony diverged. M.M. testified that all four individuals went downstairs into the basement where David Russo had his bedroom. That Russo and Starkey sat on the bed, Trevor and M.M. sat on the floor, and they all watched television. After a while, Trevor and M.M. started making out, so to speak. He then pulled a blanket over the two of them, and they proceeded to have consensual sexual relations. At the end of the evening, Trevor and David drove the two girls home. Now the defendant testified that Russo and Starkey went downstairs, but that he and the complainant remained upstairs. They listened to music, they watched television, they talked, but nothing happened. He denied any sexual contact between the two of them. He also testified that he believed that she was at least 17 years old. At the conclusion of the bench trial, the judge found the defendant guilty of both counts because he stated he found the complainant to be more credible than the defendant. Well, at the post-trial stage, defense counsel filed a motion asking the judge to allow reopening of the proofs or, in the alternative, a new trial based on the affidavit of David Russo. And the defense represented in that motion and also argued at the hearing on the motion that at some point after August of 2009, there had been a falling out between Mr. Russo and Mr. Zirkin. Russo moved out of the townhouse and, in fact, left town altogether. Didn't leave a phone number, didn't leave a forwarding address. Defense had no way to contact him and to call him in as a witness at trial. Furthermore, Mr. Russo made statements in the affidavit and at the hearing that nothing happened on the evening of this particular incident. Mr. Russo testified that he and Starkey indeed did go downstairs into the basement, but that the defendant and the complainant remained upstairs. He further indicated in his affidavit that he had separate conversations with the defendant and the complainant in the days following this evening, and both of them told him that nothing happened. The judge denied the post-trial motion. Defendant submits that was an abuse of discretion, and he asked this court to look carefully at the reasons he gave for denying that motion. First, the judge stated that he believed the defense could have obtained Mr. Russo and called him as a witness at trial, but simply made a strategic reason not to do so. Now, clearly under Illinois law, whenever a defendant brings a claim of actual innocence, whether it's in a post-trial motion or a post-conviction petition, he has the burden of establishing that he could not have obtained this evidence and presented it at trial. Well, the defendant made that showing here. Russo moved out of town. They lost touch. He had no way to find him. The state did not argue that it knew where he was or that it had tracked him down but had decided not to call him in as a witness. When Mr. Russo testified at the hearing, the state did cross-examine him, but they did not elicit evidence showing that he could have been found or was still in touch with the Zirkin family. So this finding by the judge was simply unfounded. It's nothing more than speculation. The defense carried its burden as to that particular aspect. I'm just trying to remember, was there something about the Russo fellow joining the Marine Corps? He joined the Marine Corps, that's correct. Was there an issue of whether or not your client knew that he was in the Marine Corps? Well, I think he knew he was in the Marine Corps, but he didn't know where he was and he couldn't track him down. Well, he was in the Marines when the incident occurred. I think he had actually joined even beforehand, but then when he left town and went to go on duty, the judge said, well, he could have somehow gotten in touch with the military. I don't know. I mean, there was no specific showing made that he could have found him and brought him back, and the defendant submits that that finding is simply unfounded. Would the Marine Corps find him for him if he just contacts the Marine Corps headquarters in D.C. or something? I don't know, Your Honor. I've never been in that position. The judge didn't say he had any particular experience at all. This is all you have to do. You call this number and you find out. I don't know. The state speculated, well, they should have been able to find him, but they didn't really put forth any particular reasons why or showing how it could have been accomplished. Your Honor, do you think when they leave town for duty or something, they've been lost track? The Department of Defense loses track of a soldier? I don't know. I mean, would the Department of Defense yield that information? I have no idea. I've never been in that position. A particular branch? Again, the state never said, oh, yeah, you call this number. This is who you talk to. They'll give you that contact information. Or if he'd been on duty, would the Marines have even released him back for trial? There's just simply no showing here, Your Honor, simply no showing at all. Now, the judge did go on to talk about the merits of the claim and of Mr. Russo's testimony, and he made two particular comments I ask Your Honors to consider. One, he said that Russo's testimony did not negate the possibility that the defendant and the complainant had sex, because according to Mr. Russo, he and Starkey went downstairs, but the defendant and the complainant remained upstairs. So it's possible they could have had sex unbeknownst to Mr. Russo. Well, again, Russo stated in the affidavit that he had conversations  They both told him that nothing happened. In addition, he revealed that MN told him that she liked Trevor, she would like to have a relationship with him, and apparently Russo responded that was unlikely because Trevor has a steady girlfriend. In any event, that's the source of his knowledge. But beyond that, perhaps even more importantly, the judge here overlooked a very important part of MN's testimony, which was very consistent that the sexual relations occurred in the basement, in the presence of Russo and Starkey. Now, this would be a very different case if she had said, it happened somewhere in the house, I don't remember where, or if she had said it happened in different rooms in the house, or if she had said it happened in private, there were no eyewitnesses. What about Starkey? That's a very good question, Your Honor. Starkey did not come in to testify. No indication in the record why that was the case. But the complaint he consistently testified happened in the basement, in the presence of Russo and Starkey. So if Russo says nothing happened in the basement while I was there, that directly undermines her testimony. And if you believe Russo, you just cannot believe Starkey. The judge went on to say that Russo's testimony would not have made any difference to him as the trier of fact at the bench trial, because he simply did not believe the defendant's testimony. Clearly, when a defendant chooses to testify, that's an important evidence, it's an important consideration for the trier of fact. But, of course, the burden is always on the prosecution at trial. And so the defendant would submit the more important issue was the credibility of the complaining witness. And, again, Mr. Russo's testimony directly undermines the testimony of the complaining witness. Now, Your Honor asked about Mr. Starkey, and I would submit to this court, I think we could probably all agree that in any case where there are likely to come out, if we have all of the witnesses together at trial, and in a perfect world, in any criminal case, we would have all the eyewitnesses, all the occurrence witnesses present at trial. Certainly Illinois says that a trial is supposed to be about a search for the truth. In this case, unfortunately, at trial, we only had two witnesses, and they were the ones with the most self-interest, the complainant and the defendant. Now we have a third eyewitness. Even according to the complainant, Mr. Russo was an eyewitness. We now have a third eyewitness who has come forth. The defendant submits that that goal of the search for the truth would be better served if this cause were remanded for a new trial. Now, when a defendant seeks a new trial based on newly available evidence of actual innocence, of course he must show that it is material, that it is non-cumulative. And I think he's shown that here. Now, he does not have to show that it unequivocally would result in a not-guilty verdict, that it would unequivocally exonerate him. But I think the case law basically says he has to show it's so important that a trier of fact should be allowed to consider the new evidence in conjunction with the evidence presented at trial in assessing the defendant's guilt or innocence. And some of the case laws addressing this issue states that if the new evidence gives rise to a doubt that justice was done at trial, then a new trial should be held. Clearly, Mr. Russo's testimony bolsters the defendant. It contradicts the complainant. It does give rise to a doubt that justice was done at the first trial. Now, I can't say what justice would be in this case. None of us can. But, again, it's not the defendant's burden to establish that it would have been a not-guilty verdict or even that he was not proved guilty beyond a reasonable doubt. In the Molstead case, which was also a case involving a post-trial motion and new occurrence witnesses coming forth after trial, the court said he was proved guilty beyond a reasonable doubt at trial. But based on this important new evidence,  and they remanded for a new trial. And for all of these reasons, Mr. Zirkin respectfully asks your honors to grant the same relief here to reverse the order denying the post-trial motion to vacate his convictions and to remand for a new trial. Let me just ask you real quickly, how did the police get involved in this? That's a good question. It would appear from what comes out in the record that there were rumors going around town about Mr. Zirkin being involved with some underage girls. And so they started talking to some of these girls. Initially, when they approached the complainant, she said nothing happened. And they pressed her, and then she said something did. It would appear that some of the girls they talked to said nothing happened, and others indicated that perhaps something did. And that's all I can tell your honors from what I know from reading the record. She didn't make a specific complaint to the police. And again, it was consensual for what that's worth. With regard to Russo's whereabouts, he was supposedly a friend of the father? Well, he was a friend of Trevor's. They shared a townhouse, and I guess in the course of getting to know Trevor, he got to know the father. Again, after trial, and it's in the brief I may have neglected to mention today, after trial, he came back to town to visit on July 4th and happened to run across the defendant's father. That's when he was found out for the first time about the trial, right? Right. He also had a girlfriend, Nikki, or something? Right, he had a girlfriend in town. Who better knew about Nikki? Now, they were girlfriend, boyfriend at the time of this incident, and whether that continued after he left town, I don't know. But he was also aware of it. I mean, the defendant was aware of that, too, right? Right. As I say, whether he left town before that, whether she would have been forthcoming, again, there had been a falling out between the two young men, so maybe he didn't really want to be contacted by Mr. Serkin. We don't know. We don't know. From the record, he left town, they couldn't find him, and there was no showing of other ones. And, again, the state didn't say, oh, well, we knew where he was, and we checked up on him, but we just decided not to call him. But there was no evidence he attempted to, I mean, go through the father or find out through Nikki? I'm talking about the defendant. No, no specific. Or make any efforts in that regard. No specific. Simply the representation, we lost touch with him, didn't leave a phone number or address, we didn't know where he was, we couldn't bring him in. And that was not specifically contradicted, Your Honor. All right.  Thank you. Thank you. Ms. DeMichel. May it please the Court, Counsel, Lord DeMichel, on behalf of the people. The trial judge did not abuse his discretion in denying the motion for trial. First of all, the trial judge can assess the credibility of the witness in determining whether a defendant is entitled to a new trial. That's established in the Carter case, which is a 2013 case. In this case, the trial judge specifically found, with regard to this particular witness, that D.J. Rousseau's credibility was, quote, almost nothing. So with that credibility determination made, there's no basis for a closer scrutiny of defendant's guilt. Plus, the evidence is not newly discovered. Defendant knew all along that Rousseau was there, allegedly, in the basement. That's how he testified at trial. And the defendant has the burden of proving no lack of diligence in not discovering the evidence earlier. The burden isn't on the people to prove they could have contacted him. The burden is on the defendant to prove that he exercised due diligence in order to attempt to obtain the evidence, and that despite the exercise of due diligence was unable to do so. And in this case, there's simply no evidence as to any attempts made in order to try to contact Rousseau. The trial judge was the one that brought up the military search idea, so clearly the trial judge was aware of what it is that military keeps track of its active members. So had he contacted a number through the Marines, he should have been able to locate them. But the defendant simply didn't state a single step that he took in order to try to contact him. There's no evidence of that whatsoever. The only evidence he seemed to be relying on is that Rousseau testified that he left the state without telling anyone where he was going, and he didn't leave an address. But a mailing address isn't the only way to contact a person. And he continued to date Nikki for seven months after leaving the state, and we know that because the defendant testified at trial that Rousseau had continued to date Nikki. So clearly he would have been in contact with Nikki. He hadn't lost contact with everyone as he testified. And the defendant can't meet his burden of showing diligence when he hasn't shown any attempt made to contact Rousseau. So the trial judge did not abuse his discretion in denying the defendant's motion for a new trial, and the people would ask that this court affirm his conviction in that case. Should it be any different at all when you've got a conviction like this based on he said, she said? You've got two people. He did it? The defendant said, no, I didn't. I think that would go to the second prong of the newly discovered evidence standards, but you still have to meet the standard that the evidence must be of such on retrial, and that can't be done here because of the credibility. And you also have to show that it couldn't have been exercised further. The evidence could have been located if due diligence had been shown. So while it might be relevant to the middle prong, the standards for a new trial on newly discovered evidence don't change based on the type of case. Does it matter or should it matter at all that the, you know, Russo isn't really coming in as a friend of the defendants. He had a falling out. No one ever says that they healed their relationship or anything that, you know, they had a falling out over the payment of rent, left on bad terms. And I mean, to me, him coming forward isn't out of friendship because it does, there is no evidence that, I mean, you know, I know that the judge didn't find him credible, but I didn't really see why he listed, you know, what his findings were based on, why he didn't find him credible. Well, first of all, the burden is still on the defendant to show the diligence. Maybe they had a bad relationship and maybe had he exercised steps, Russo would have refused to talk to him. We don't know because he simply didn't put on any evidence that he tried to contact him. And what was the second part of that question? He said that we know that he can't meet the third prong, because it wouldn't have made any difference in the outcome because Russo found that to be credible. Well, Russo was impeached on many levels. For example, Russo testified that he met Detective Ogun in November. He testified he was positive it was Ogun. Ogun was then brought in and he testified he had never met Russo ever. And then he changed his story and said, oh, well, I also then met him earlier in August, and I know it was Ogun then. He also said at that point, I gave him my military ID. No, I didn't. I gave him my license. No, I gave him both. Couldn't say one way or another. Regarding how he got to court that day, he said, well, I have a friend. We took the train. No, I took the train. No, that friend was actually the defendant's father. So there's also no evidence that he had had a falling out with the father throughout the whole period because the only thing he ever said about that was he was still his friend. And he also said, oh, I was with him the whole time. Nothing happened. But then later he also changed his story and said, oh, actually, we were downstairs. We watched a movie. We fell asleep. They were upstairs. So he wasn't with him the whole time. So because he had so many inconsistencies and he had also been impeached by Ogun, the trial judge didn't manifestly err in determining that credibility. I think not on this record. It's all those inconsistencies. The trial judge talked about his mannerism while testifying, too. I think he did. I know he at least talked about the mannerism while testifying and determining the credibility of the defendant. And he may also have regarding Russo, but I don't remember for sure. Any further questions? Of course, I guess that by itself. I mean, the fact that the defendant's father tracks this kid down and maybe gets on a train with him to bring him back, just try to save your kid's bacon, which was what any father would do, doesn't necessarily reflect poorly on the witness's credibility. I think the witness claimed that he ran into him in a store sometime later. The fact that he seemed to try to hide the fact that how he got there and just he changes his story three times within a sentence as to how he got there. So it's that inconsistency, not the fact that the father brought him there. But the fact that he was still friendly with the father would be further indication that if the father had tried to contact him through any of the means that the trial judge suggested were possible and defense counsel didn't state that he had tried to use, that an attempt should have been successful. Thank you, Your Honor. Thank you. Mr. Fisher, some rebuttal? Thank you, Your Honor. Your Honor, Justice Schmidt remarked it was a credibility case. He said she said case, and that's exactly right. I would venture to say that for the trier fact, that's probably the most difficult type of case to attempt to resolve. There's no physical evidence, no other eyewitnesses. Well, here, according to the complainant, there were two eyewitnesses. Now, there's nothing in the record about why Nikki Starkey wasn't brought forth. But now there's Mr. Russo. This is a witness who could shed light on what happened here and aid assist the trier fact. In weighing that, he said she said credibility. And the defendant submits that under Molstead and other cases, that the defendant should be given opportunity for new trials so the trier fact has the ability to assess the credibility of Mr. Russo in addition to these other two witnesses in determining what really did or did not take place. I think some of the weaknesses in Mr. Russo's testimony, the counsel's pointed out today, perhaps attributable to a nervous witness. He's certainly not a professional witness. You know, he's still kind of a young kid himself. If you look at it, Russo's got nothing really to gain or lose here. Yes, he was at one time a friend of the defendant's. They chaired a townhouse. But at this point, he's on the Marines. He's living out of town. He's on to his next life, whatever. I mean, he's got nothing particular to gain here. According to the post-trial motion, he came back to town to visit on July 4th, ran into the defendant's father. The defendant's father told him what happened at trial, and the response was, that's not right because I know nothing happened. You know, a strike is the type of person who's, you know, like a witness who has a deal with one side or the other or has some particular self-interest. It's not really shown to have any particular self-interest here. State argues, well, the testimony's not new because the defense knew about Russo. But, of course, the important thing is not that they knew about him, but that now they can bring him in. Now his testimony is available. That's the key question. The defendant submits that a showing was made, that his testimony was not available previously. The judge's finding, to the contrary, is not based on the evidence. It's simply speculation that they could have tracked him down. And under the circumstances, defendant submits, the goal of search for the truth would be better served if this cause were remanded for a new trial. And if at that point Starkey comes in, so much the better. So much the better. But at least get three of the eyewitnesses in here and let the trier of fact listen to all of these witnesses and make a determination as to what really happened here. You know, as a side, I always wonder why people agree to bench these cases. It's like this. Seems like them. I just don't get it. Can't answer that question. Yeah, I know. Any questions? Okay. Mr. Fisher, thank you. Mr. Michael, thank you. The matter will be taken under advisement. Written disposition will be issued. And right now the court is adjourned until the next call. Thank you.